**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL R. D'ALESSANDRO,     :
                      :    Civil Action No. 04-6128 (WHW)
        Petitioner,    :
                      :
        v.           :    **OPINION**
                      :
KATHRYN E. MacFARLAND, et al.,:
                      :
        Respondents.   :

**APPEARANCES:**

Petitioner pro se
Michael R. D'Alessandro
South Woods State Prison
P.O. Box 6000
Bridgeton, NJ 08302

Counsel for Respondents
Teresa A. Blair
Dept. of Law & Public Safety
Division of Criminal Justice
Appellate Section
P.O. Box CN 086
Trenton, NJ 08625

**WALLS**, District Judge

Petitioner Micheal R. D'Alessandro, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Kathryn E. MacFarland and the Attorney General of the State of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> About noon on February 16, 1982 a man entered Weinglass Jewelry store at Essex Green Plaza in West Orange, asked to see some watches and when they were displayed on top of the counter, grabbed them and ran. The owner, Norman Weinglass, chased and almost caught the robber.  He was shot in so doing but was able to obtain a license number as the robber drove off.  The number was not completely accurate but curiously enough led the police to defendant.  In the course of investigating the plate number, which was listed for an Elizabeth resident,[fn1] the West Orange police visited the Elizabeth police.  When they heard the description and saw an artist's composite picture, the Elizabeth police identified defendant.  The reported license plate was 624RZL; an attempt to try other combinations led the police to look up 524RZL which turned out to have been issued for a car owned by defendant's wife. Defendant was positively identified by Weinglass both in a photo identification late on the day of the robbery and in court.  Two other witnesses who had been unable to make positive photo identifications also identified the defendant in court: the clerk who had been showing the watches and a passerby who witnessed the subsequent chase and shooting.
>
> > [fn1] Initially, the Elizabeth man seemed to fit the robber's general description but further investigation showed he did not and eliminated him as a suspect.

(R7, Opinion of Appellate Division, dated Nov. 16, 1998, at 2-3.)

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

B.   Procedural History

Following a jury trial in the Superior Court of New Jersey, Law Division, Essex County, Petitioner was convicted of armed robbery, second degree aggravated assault, third degree aggravated assault, and possession of a handgun for an unlawful purpose.  By judgment of conviction filed May 9, 1986, Petitioner was sentenced to an aggregate term of 29 years' imprisonment with a minimum of 13 years.  (R2.)

On direct appeal, the Appellate Division affirmed the convictions, but remanded for correction of the sentence.  (R7.) A modified judgment of conviction, reflecting a sentence of 20 years, with ten years' parole ineligibility, was filed on March 3, 1989.[2]  (R9.)  By Order filed March 22, 1989, the Supreme Court of New Jersey denied certification.  (R11.)

Thereafter, Petitioner filed a motion for post-conviction relief in the trial court.  (R13.)  By Order filed August 27, 1990, the trial court denied relief.  (R14.)  The Appellate Division affirmed the denial of relief by Opinion filed December 7, 1992.  (R18.)  By Order filed March 11, 1993, the Supreme Court of New Jersey denied certification.  (R21.)

Petitioner then filed two petitions for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court, which were

---

[2] Petitioner stipulated to dismissal of his direct appeal of the amended judgment.  (R16 at Da22.)

consolidated and dismissed for failure to exhaust state remedies
with respect to several of the claims asserted.  See D'Alessandro
v. Morton, 97-cv-0467 (WHW); D'Alessandro v. Morton, 97-cv-1260
(WHW).  By Order entered August 23, 2002, the U.S. Court of
Appeals for the Third Circuit dismissed Petitioner's appeal as
untimely.  See D'Alessandro v. Hendricks, No. 01-3669.[3]

From the record supplied to this Court, it does not appear
that Petitioner returned to the state courts of New Jersey to
exhaust his unexhausted claims.  Instead, by Petition dated
December 11, 2004, Petitioner filed this Petition for writ of
habeas corpus, incorporating by reference the previous petition
docketed as Civil Action No. 97-1260, and abandoning several
claims that this Court previously had found to be unexhausted.[4]

---

[3] On June 25, 2003, Petitioner filed in the Court of Appeals
for the Third Circuit a petition for mandamus related to these
cases, which the Court dismissed on November 18, 2003, as
untimely.  See In re D'Alessandro, No. 03-2821.

[4] Even if this Court were to find the statute of
limitations, see 28 U.S.C. § 2244(d), equitably tolled during the
time Petitioner's previous petitions were pending in federal
court, this Petition appears to be untimely, having been filed
here more than two years after the Court of Appeals dismissed
Petitioner's previous appeal.  Respondents have not asserted,
however, that the Petition is untimely.  As Petitioner's claims
are plainly meritless, this Court will not prolong the litigation
by injecting the issue of timeliness into the proceedings.  Cf.
Day v. McDonough, 126 S.Ct. 1675 (2006) (district court sua
sponte may raise issue of timeliness even where government has
conceded timeliness).

Respondents have answered, asserting that one claim remains unexhausted and urging dismissal of this allegedly mixed petition or denial on the merits. As the one claim that allegedly is unexhausted is plainly meritless, this Court will exercise its discretion to deny the claim on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2).

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v.

6

Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

## III. ANALYSIS

### A.    The Identifications

Petitioner asserts that the trial court should have held a <u>Wade</u>[5] hearing to determine whether the witnesses' identifications resulted from improper police influence. (Petition, Ground One.)

The trial judge refused to permit a pre-trial <u>Wade</u> hearing, because there was no evidence at that time of improper police influence, but did agree to rule on the admissibility of the identifications based upon the evidence adduced at trial. At trial, the victim testified as to two hospital identifications of Petitioner based upon a photo array, one immediately after he came out of the recovery room following surgery and the other two

---

[5] <u>United States v. Wade</u>, 388 U.S. 218 (1967) (where an accused was not represented by counsel in post-indictment line-up identification procedure, accused is entitled to hearing to determine whether identification procedure was so tainted that in-court identification should be suppressed).

8

days later, and the victim identified Petitioner in-court.   (R43
at 66-106.)   The passer-by, Ms. Beckerman, identified Petitioner
in court and testified that she had identified him from a photo
array on the day of the robbery.   In the hall outside of the
courtroom, prior to Ms. Beckerman's testimony, the prosecutor
again showed her the photo array, without advising defense
counsel in advance or inviting defense counsel to be present.
(R43 at 107-127.)   Finally, the clerk, Ms. Weinberg, identified
Petitioner in court and also testified that she was unable to
identify Petitioner from the photo array on the day of the
robbery, because she was upset, but that she recognized him in a
newspaper photograph about the robbery after his arrest.   (R43 at
38-65.)

     At the close of testimony, the trial court found all of the
identifications admissible.   (R44 at 74-78.)   The court found
nothing suggestive in the police procedures with respect to any
of the photo array identifications.   With respect to the victim's
hospital identification on the day of the robbery, the court
found the victim "at worst ... a little groggy" but able to make
the identification.   The court noted that all the witnesses had
encountered the robber under conditions providing an adequate
opportunity to observe his features, including observations from
a distance of one yard to thirty feet, in good lighting, and for
several minutes.

The Appellate Division rejected Petitioner's challenges to the identifications on direct appeal:

> The visit to the Elizabeth police which led to the initial identification of defendant as a suspect was made on the afternoon of the robbery. A photograph of defendant was obtained and a photo display made up which was shown to the three witnesses later that day. Ms. Weinberg, the clerk, was shown the array at her home in the late afternoon. She was unable to make any identification. Mrs. Beckerman, the passerby, was shown the array at her home in the early evening. She thought defendant looked like the robber but wasn't positive -- her response was treated by the police as a non-identification. Mr. Weinglass was shown the array in his hospital room after his return from surgery necessitated by the shooting. He positively identified defendant.
>
> When the matter came on for trial some four years later, it was generally understood there would be one identification, that of Weinglass. Defendant sought a Wade[fn2] hearing but was unsuccessful because the trial judge perceived no showing of suggestibility and felt he could handle any evidential problems as the trial proceeded without the need for a separate Rule 8 hearing. See State v. Ortiz, 203 N.J. Super. 518, 521-522 (App. Div. 1985), certif. den. 102 N.J. 335 (1985).
>
> > [fn2] United States v. Wade, 388 U.S. 218 (1967).
>
> After the trial started, the prosecutor learned that the other witnesses could also identify defendant and were prepared to do so in court. Indeed, Mrs. Beckerman testified she had identified defendant the day of the robbery from the photo array although the detective testified she had not been positive. For her part, Ms. Weinberg testified she had been too nervous to identify defendant from the earlier array but had recognized his picture when she saw it in a newspaper account of the robbery. Both, as noted, made positive in court identifications.
>
> In both counsel's brief and his own pro se brief, defendant claims error in the refusal of the trial judge to conduct a separate Wade hearing. Absent some

10

evidence of impermissible suggestiveness, no such hearing is required. <u>See</u> <u>State v. Ortiz</u>, <u>supra</u>. Moreover, an examination of the record discloses that the judge considered the admissibility of the identifications before their admission and that in each case the appropriate reliability factors were brought out. <u>See</u> <u>State v. Carter</u>, 91 N.J. 86, 129-130 (1982). The trial judge's findings that there was nothing suggestive in the display of the photographic arrays on the day of the robbery (or on the day of trial) and that the witnesses' identifications, when viewed from a totality of the circumstances, were reliable, were supported by substantial credible evidence in the record.[fn3] <u>See</u> <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964). We are fully satisfied the witnesses' in-court identifications represented independent recollections of the 1982 incident. <u>See</u> <u>State v. Farrow</u>, 61 N.J. 434, 451 (1972), <u>cert. den.</u>, 410 U.S. 937 (1973).

> [fn3] Defendant's attack on Weinglass' in-court identification contains an inherent <u>non sequitur</u>. If Weinglass was too groggy to make a proper identification in the hospital, he was too groggy to have that identification taint his later in-court identification.

Most of defendant's arguments relate not to admissibility but to weight. Weighing evidence is a process peculiarly within the province of the jury. <u>Ibid</u>. In his <u>pro se</u> brief defendant contends that Mrs. Beckerman's identification was tainted by a hallway viewing of the array during the trial and that Ms. Weinberg's identification was tainted by the suggestiveness of the newspaper photograph. We find no evidence of any suggestibility in Mrs. Beckerman's viewing of the array.[fn4] To the extent Ms. Weinberg's viewing of that photograph may have been tainted by the accompanying article, it did not result from state action and could only affect the weight of her in-court identification. The need to weigh the evidence and particularly to determine whether the identifications were based upon the witnesses' observations at the time of the crime was carefully explained to the jury in the charge. We presume the instructions were followed. <u>See</u> <u>State v. Manley</u>, 54 N.J. 259, 270 (1969).

11

> [fn4] Defendant's contention that Mrs.
> Beckerman was unable to identify him on the
> day of the robbery is not supported by the
> record.  She testified she had.  According to
> the detective, she was not positively sure.

(R7 at 3-6.)

While the Sixth Amendment does not require that defense counsel be present when a witness views police or prosecution photographic arrays, see United States v. Ash, 413 U.S. 300 (1973), an accused nevertheless is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array, id. at 320; Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons, 390 U.S. at 383.  The Court has identified certain procedures that heighten the risk of misidentification, including such practices as displaying the photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs

12

or is in some way emphasized, or indicating to the witness that
police have other evidence that one of the persons pictured
committed the crime.  Id.  Despite the risk of misidentification,
the Supreme Court has not prohibited the employment of
photographic identification methods, either in the exercise of
its supervisory power or as a matter of constitutional
requirement.  Id.  Instead, the Court has required that each case
must be considered on its own facts and must be evaluated in
light of the totality of surrounding circumstances; also, the
Court has noted that the risk of conviction based on photo
misidentification "may be substantially lessened by a course of
cross-examination at trial which exposes to the jury the method's
potential for error."  Id.

Where there has been an unnecessarily suggestive pre-trial
photographic identification of a suspect,

> reliability is the linchpin in determining the
> admissibility of identification testimony ... .  The
> factors to be considered ... include the opportunity of
> the witness to view the criminal at the time of the
> crime, the witness' degree of attention, the accuracy
> of his prior description of the criminal, the level of
> certainty demonstrated at the confrontation, and the
> time between the crime and the confrontation.  Against
> these factors is to be weighed the corrupting effect of
> the suggestive identification itself.

Manson v. Brathwaite, 432 U.S. at 114 (citing Neil v. Biggers,
409 U.S. 188, 199-200 (1972)).  "[C]onvictions based on
eyewitness identification at trial following a pretrial
identification by photograph will be set aside on that ground

13

only if the photographic identification procedure was so
impermissibly suggestive as to give rise to a very substantial
likelihood of irreparable misidentification." Simmons, 390 U.S.
at 383.  See also Stovall v. Denno, 388 U.S. 293, 302 (1967).

Where a trial court has failed to exclude identification
evidence obtained in violation of a defendant's due process or
Sixth Amendment rights, the habeas court must determine whether
the failure to exclude that evidence was harmless constitutional
error under Chapman v. California, 386 U.S. 18 (1967).  See Moore
v. Illinois, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained
that the

> Simmons/Stovall inquiry is essentially two pronged.
> The first question is whether the initial
> identification procedure was "unnecessarily" or
> "impermissibly" suggestive.  This inquiry actually
> contains two component parts: "that concerning the
> suggestiveness of the identification, and that
> concerning whether there was some good reason for the
> failure to resort to less suggestive procedures."  If a
> procedure is found to have been unnecessarily
> suggestive, the next question is whether the procedure
> was so "conducive to ... mistaken identification" or
> gave rise to such a "substantial likelihood of ...
> misidentification" that admitting the identification
> would be a denial of due process.

United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991)

(citations omitted) (emphasis added by Third Circuit).

Here, the findings of the Appellate Division that the
identifications were not tainted by any impermissibly suggestive
government identification techniques, and that they were

14

sufficiently reliable to be admissible, are neither contrary to nor an unreasonable applicable of clearly established federal law, nor are they based upon an unreasonable determination of the facts.  Petitioner is not entitled to relief on this claim.

B.  Adjournment

Petitioner contends that the trial court deprived him of due process by granting the prosecution an adjournment on the day trial was scheduled to commence.  The Appellate Division rejected this claim on direct appeal.

> When the case was assigned for trial, it was adjourned at the request of the prosecutor who represented that he had just learned of two additional witnesses.  Defendant contends the adjournment unfairly prejudiced him by permitting the State to correct inadequacies of its case resulting from prosecutorial neglect or oversight.  We are fully satisfied defendant was not prejudiced by the adjournment.  In fact, the additional witnesses were not used by the State; the so-called inadequacies did not exist.  "The granting of a continuance necessarily rests within the sound discretion of the trial court, and the exercise of that discretion will not constitute reversible error in the absence of a showing of an abuse of discretion causing defendant a manifest wrong or injury."  State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985), certif. den., 101 N.J. 266 (1985).

(R7 at 7.)

Petitioner has pointed this Court to no Supreme Court precedent holding that a defendant has a due process right to proceed to trial on the scheduled date, absent a speedy trial claim, which Petitioner does not assert here.  In the context of determining whether the refusal to grant a defense request for

15

continuance amounts to a due process deprivation, the U.S. Supreme Court has held that "[t]he matter of continuance is traditionally within the discretion of the trial judge." Ungar v. Sarafite, 376 U.S. 575 (1964).  As the Court of Appeals for the Seventh Circuit has observed:

> Errors in the management of a state criminal trial do not deny the defendant due process of law ... unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair[.] ... We find it hard to imagine circumstances in which a scheduling decision unrelated to the right to a speedy trial would deny the defendant due process of law.  It trivializes the Constitution and the function of federal habeas corpus to argue that the minutiae of trial scheduling furnish grounds for federal intervention in the state criminal process.

Bell v. Duckworth, 861 F.2d 169, 170-71 (7th Cir. 1988), cert. denied, 489 U.S. 1088 (1989) (citations omitted).  See also Drake v. Clark, 14 F.3d 351, 358-59 (7th Cir. 1994) (no due process violation in trial court's grant of one-week continuance to state to locate witnesses); Webb v. Hutto, 720 F.2d 375 (4th Cir. 1983), cert. denied, 465 U.S. 1080 (1984) (same).

Here, Petitioner has pointed to no evidence or witnesses that disappeared during the time the trial was continued.  The conclusion of the Appellate Division that Petitioner was not deprived of due process by the delay is neither contrary to nor an unreasonable application of clearly-established federal law, nor is it based upon an unreasonable determination of the facts. Petitioner is not entitled to relief on this claim.

16

C.   Prison Garb

Petitioner contends that he was deprived of his right to due process by being tried in prison garb and by possibly being seen by the jurors, one time, while handcuffed.  With respect to Petitioner's attire, the record reflects only that, when one witness identified Petitioner as wearing "a light tan ...," the Petitioner spoke up, "My prison uniform."  (R43 at 50.)  The record evidence of Petitioner having been seen in handcuffs is similarly scant.  During deliberations, the jury sent the judge a question.  Apparently in connection with that event, the jury room door was opened while Petitioner, apparently handcuffed, was in the hall.  A Court Officer advised the court, "After we brought the prisoner out, the alternates opened the door."  (R44 at 146.)  The court further questioned the Court Officer, "Actually, was he brought in in handcuffs -- he wasn't paraded in handcuffs?" to which the Court Officer responded, "He was coming around and somebody just came out the door," (R44 at 150.)  The Appellate Division rejected Petitioner's claims on direct appeal.

> In the brief filed by his counsel and his own pro
> se brief defendant claims he was deprived of a fair
> trial by the fact he was dressed in prison garb during
> the trial and at one time was seen by jurors while
> handcuffed.  We are not satisfied from defendant's
> single remark during trial that he was in fact dressed
> in prison clothes.  In any event, there is no evidence
> that he was compelled to appear in that fashion.  See
> State v. Lawson, 217 N.J. Super. 47, 49 (App. Div.
> 1987).  The lack of objection leads to the logical
> inference he was either properly dressed or that his
> manner of dress was a matter of choice.  See State v.

17

Macon, 57 N.J. 325, 333 (1971); also State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974), certif. den., 65 N.J. 574 (1974) (trial errors induced by defendant do not form a basis for reversal on appeal). Nor does the possibility defendant was seen in handcuffs by a juror require reversal. See State v. Jones, 130 N.J. Super. 596, 599-600 (Law Div. 1974).

(R7 at 7-8.)

In Estelle v. Williams, 425 U.S. 501 (1976), the Supreme Court established that a defendant cannot be compelled to stand trial before a jury in identifiable prison garb. The Court reasoned that to force a defendant to appear in such fashion would impair the presumption of innocence while furthering no vital state interest. 425 U.S. at 505. A represented defendant's failure to object at trial to appearing in prison garb, however, "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 425 U.S. at 512-13. Here, Petitioner was represented by counsel and there was no objection to appearing in prison clothing. Accordingly, the decision of the Appellate Division on this claim is neither contrary to nor an unreasonable application of clearly applicable federal law.

With respect to the claim that one or more jurors may have seen Petitioner while he was handcuffed, the U.S. Supreme Court recently reiterated that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a

18

special need." Deck v. Missouri, 544 U.S. 622, 626-29 (2005)
(citing Estelle v. Williams, 425 U.S. 501 (1976) and Illinois v.
Allen, 397 U.S. 337 (1970) (recognizing that a criminal defendant
is prejudiced when he appears before the jury in shackles)).
Nevertheless, where a court, without adequate justification,
orders a defendant to wear shackles that will be seen by a jury,
the error is subject to harmless-error analysis pursuant to
Chapman v. California, 386 U.S. 18, 24 (1967). Id. at 635. See
also United States v. Salehi, 2006 WL 1759855 at *13-14 (3d Cir.
June 28, 2006).

Numerous courts, however, have distinguished the situation
in which a criminal defendant in shackles while being transported
is briefly observed by jurors, generally finding such encounters
harmless. See, e.g., U.S. v. Lattner, 385 F.3d 947 (6th Cir.
2004), cert. denied, 543 U.S. 1095 (2005); United States v.
Olano, 62 F.3d 1180, 1190 (9th Cir. 1995); Wright v. Texas, 553
F.2d 185 (5th Cir. 1976).

Here, the record suggests only that an alternate juror may
have seen Petitioner in handcuffs momentarily while Petitioner
was being moved. (R44 at 146.) The jury had already begun
deliberations and there is no evidence that such alternate juror
told the other jurors of what he had seen. Even if other jurors
saw Petitioner or knew of the incident, Petitioner failed to
object at trial or to create a record as to the precise

19

circumstances surrounding the event.  In light of the other
evidence produced at trial, there is no reason to conclude that
this incident was anything but fleeting and harmless.  The
decision of the Appellate Division is neither contrary to nor an
unreasonable application of clearly established federal law.
Petitioner is not entitled to relief on this claim.

D.    Prosecutorial Misconduct/Brady Violations

       Petitioner claims that the prosecutor improperly highlighted
his past criminal behavior (based on the fact that a police
officer testified that he was able to identify Petitioner based
on the description provided by witnesses), used surprise
identification witnesses at trial (based on the fact that the
prosecutor had previously told defense counsel that only the
victim would make an identification), used surprise evidence (a
vehicle registration that tied Petitioner's wife to the car in
which the robber escaped the scene), used perjured testimony
(based upon Ms. Weinberg's testimony regarding her identification
of Petitioner), and failed to produce exculpatory evidence
(consisting of medical records of the victim which allegedly
reflected that he did not make a positive identification of
Petitioner during the first hospital identification and failure
to preserve photo arrays shown to Ms. Beckerman and Ms. Weinberg,
other than the one from which they both identified Petitioner).

On direct appeal, the Appellate Division denied most of these claims under the rubric of "Prosecutorial Misconduct."

> In his pro se brief defendant claims prosecutorial misconduct in bringing out his past involvement with the police, in producing surprise in-court identifications, in using perjured testimony and in suppressing identification evidence. These contentions are clearly without merit. Detective O'Leary's testimony made no reference to criminal involvement. The judge properly instructed with respect to the photograph. The State did not intentionally conceal or withhold information with respect to the identifications nor unfairly surprise defendant. The prosecutor only learned that the women were prepared to identify defendant on the date of trial and the defense knew of their existence and had available all the information to challenge those identifications by way of cross-examination. See State v. Zola, ___ N.J. ___ (1988) (slip opinion at 41-42). The claimed existence of other photographs is based upon Ms. Weinberg's faulty recollection before the Grand Jury that she had made a photographic identification of defendant. We are satisfied that the record as a whole supports the State's denial that any such photograph existed. The motor vehicle abstract was a matter of public record readily available to defendant and referred to an issue well known to him. The confusion in Ms. Weinberg's testimony was a matter for the jury to consider in gauging her credibility. In any event, as defendant['s] counsel apparently conceded at the time, there was no evidence the prosecutor permitted or even condoned any perjured testimony.

(R7 at 6-7.)

On appeal from the denial of post-conviction relief, the Appellate Division further rejected the claim that the prosecution had violated Petitioner's due process rights by failing to produce the victim's medical records, allegedly containing an entry that he had failed to identify Petitioner from the photo array shown to him on the day of the incident.

No Brady violation has been shown as no evidence
supports defendant's assertion that the prosecution
possessed the victim's medical records. Even if a
Brady violation did occur, it would not have created a
reasonable doubt that did not otherwise exist. See
United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49
L.Ed.2d 342 (1976); see also Brady v. Maryland, 373
U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1976); State v.
Marshall, 123 N.J. 1, 200 (1991); State v. DiFrisco,
118 N.J. 253, 260 (1990) (finding no Brady violation
where the "putative exculpatory evidence" did not
sustain defendant's version of the facts and the
prosecution's file did not contain the exculpatory
evidence); State v. Engel, 249 N.J. Super. 336, 389
(App. Div.) (in order to prove Brady violation, must
first show that prosecution failed to disclose
evidence), certif. denied, ___ N.J. ___ (1991); State
in the Interest of D.P., 232 N.J. Super. 8, 21 (App.
Div. 1989) (accepting trial court's finding that
evidence either never existed or was destroyed through
no fault of prosecution); State v. Mercer, 211 N.J.
Super. 388, 394 (App. Div. 1986) (holding that there
was no Brady violation; even though defendant's blood
test results were disposed, defendant still had full
opportunity to question about results).

(R18 at 9-10.)

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme

Court held that "the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution."

See also Giglio v. United States, 405 U.S. 150, 154 (1972) ("A

finding of materiality of the evidence is required under

Brady."). Exculpatory evidence is considered material "if there

is a reasonable probability that, had the evidence been disclosed

to the defense, the result of the proceeding would have been

22

different."  Strickler v. Greene, 527 U.S. 263, 280 (1999)
(quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
Nondisclosure merits relief only if the prosecution's failure
"'undermines confidence in the outcome of the trial.'"  Kyles v.
Whitly , 514 U.S. 419, 434 91995) (quoting Bagley, 473 U.S. at
678).  There is, however, "no general constitutional right to
discovery in a criminal case, and Brady did not create one."
Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (citing Wardius
v. Oregon, 412 U.S. 470, 474 (1973) ("the Due Process Clause has
little to say regarding the amount of discovery which the parties
must be afforded ... .").)

Here, the Appellate Division found that there was no
evidence of deliberate deception by the prosecutor.  Cf. Mooney
v. Holohan, 294 U.S. 103 (1935) (deliberate deception of a court
and jurors by the presentation of known false evidence is
incompatible with "rudimentary demands of justice").  The
identity of the identification witnesses was known to defense
counsel, as was the content of their grand jury testimony.  There
is no evidence that the prosecutor was aware before the day of
trial that these witnesses would be able to identify Petitioner,
but, in any event, defense counsel could have attempted to
interview them before trial and he was in possession of the
information he needed in order to challenge the reliability of
their identifications.  The record establishes that defense

counsel also was aware before trial of the issue as to ownership of the vehicle involved in the robbery and the evidence that suggested it was owned by Petitioner's wife.  There is no evidence that the prosecutor was in possession of the victim's medical records or was aware of the alleged entry indicating that the victim did not identify Petitioner the first time he was shown the photo array.  However, Petitioner referred to the medical records in a letter to his counsel suggesting that they be obtained for other reasons, and defense counsel apparently did not make any attempt to obtain them.  In any event, the Appellate Division concluded that any evidence of a failed identification on the day of the incident is not material, as the victim identified Petitioner two days, later from the same photo array, and at trial.  This Court agrees that the evidence of a failed first identification is not material.  Nor is there any evidence that the prosecution deliberately introduced perjured testimony by the identification witness Ms. Weinberg, as defense counsel conceded at trial, and defense counsel ably cross-examined as to inconsistencies in the testimony.  (R43 at 51-65.)  With respect to the allegation that the prosecutor suppressed a photo array other than the one from which the witnesses identified Petitioner, that allegation is without support in the record and appears to be based, as found by the Appellate Division, on one witness's faulty recollection before the grand jury.  (R40.)

24

Finally, the Appellate Division correctly found that Detective O'Leary made no reference to prior criminal activity by Petitioner when he testified that he was able to identify Petitioner from the description given to him and from his viewing of a sketch based upon the witnesses' descriptions.  (R44 at 43-49.)  Thus, there was no introduction of evidence of other crimes or bad acts that might have deprived Petitioner of his due process rights.  Cf. Estelle v. McGuire, 502 U.S. 62 (1991) (finding no due process violation from introduction of evidence of prior bad acts that are probative on the question of intent).

The conclusion of the Appellate Division that the prosecutor did not deprive Petitioner of his due process rights is neither contrary to nor an unreasonable application of clearly-established federal law, nor is it based upon an unreasonable determination of the facts.  Petitioner is not entitled to relief on these claims.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

25

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

William H. Walls
United States District Judge

Dated:  2 August 2006

26